# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

MARK RADCLIFFE,

                Petitioner,

v.                                  CIVIL ACTION NO. 5:17-cv-04045
                                          (Criminal No. 5:16-cr-00019-02)

UNITED STATES OF AMERICA,

                Respondent.

## MEMORANDUM OPINION AND ORDER

On September 26, 2017, the Movant filed a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence (Document 256). By *Standing Order* (Document 257) entered on September 27, 2017, the matter was referred to the Honorable Cheryl A. Eifert, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636.

On March 25, 2019, the Magistrate Judge submitted a *Proposed Findings and Recommendation* (PF&R) (Document 265), wherein it is recommended that this Court deny the Movant's § 2555 motion and dismiss this action with prejudice. The United States filed a *Response of the United States to Proposed Findings and Recommendations* (Document 266), providing additional factual support for the findings contained in the PF&R. As the result of deadline extensions, objections to the Magistrate Judge's *Proposed Findings and Recommendation* were due by June 5, 2019. The *Movant's Objections to the Proposed Findings and Recommendations* (Document 276) were filed on June 3, 2019.

In addition, the Court has reviewed the Movant's *Section 2255 Rule 6 Leave of Court Request* (Document 277), wherein he seeks discovery related to an additional allegation of unfairness during the trial. For the reasons stated herein, the Court finds that the motion for discovery should be denied and the PF&R should be adopted.

**FACTS**

Magistrate Judge Eifert's PF&R sets forth in detail the procedural and factual history surrounding the Movant's motion. The Court now incorporates by reference those facts and procedural history, but in order to provide context, the Court provides the following summary. The facts contained herein are drawn from the testimony, evidence, and procedural records in the underlying criminal case, as well as the materials presented herein.

The Movant, Mark Radcliffe, was convicted of conspiracy to tamper with a witness on October 20, 2016, following a four-day jury trial. On May 10, 2017, he was sentenced to 60 months in prison, to be followed by three years of supervised release.

Mr. Radcliffe's charges arose from the arrest and prosecution of his son, Seth Radcliffe.[1] The United States presented evidence that on December 23, 2015, Seth went to the home of his former girlfriend, M.S., with a gun, shot through her front door, and threatened a neighbor with the gun. After he entered her home with the gun, she agreed to leave with him, and he drove with her to North Carolina, making two stops along the way. She was eventually able to call 911. Police attempted to stop the car, but Seth refused to pull over for 15 or 20 minutes. He eventually stopped and was arrested.

---

[1] Seth died by suicide in jail prior to his kidnapping trial.

During the car chase, M.S. called Jimmie Harper, Seth's best friend and Mr. Radcliffe's co-conspirator in the witness tampering scheme. The call was made at Seth's request. Mr. Harper informed Mr. Radcliffe of the incident, using his sister as an intermediary because his sister was related to the Radcliffes by marriage. M.S. spoke with Mr. Harper again that evening and told him what happened. Mr. Radcliffe called Mr. Harper later that night, and Mr. Harper testified that they discussed the situation and the need to speak with and attempt to influence M.S. before she gave any statements or testimony. Mr. Harper spoke with M.S. the next morning and she described more details of the kidnapping. Mr. Harper called Mr. Radcliffe shortly after speaking with M.S. The three continued to exchange telephone calls and text messages on December 24, 2015, and throughout the course of the next several days and weeks, with Mr. Harper acting as the primary point of contact with M.S. Mr. Harper testified that he and Mr. Radcliffe planned and discussed what he would say to M.S. to convince her to tell police that she went with Seth willingly and to convince her to skip a preliminary hearing.

Mr. Radcliffe also spoke with Seth. After M.S. received a grand jury subpoena, the three formulated a plan for Seth to write a letter detailing his version of events, which Mr. Radcliffe collected from Seth, passed to Mr. Harper, and Mr. Harper reviewed with M.S. so that she could offer testimony to the grand jury consistent with the letter. He also offered her guidance on how to avoid saying anything that could be damaging to Seth and emphasized that she should not say that Seth forced her to go with him.

Phone records established the timing of the communications, and some calls occurring while Seth was in jail were recorded. The evidence as to the content of the communications between Mr. Radcliffe and Mr. Harper was limited to the testimony of Mr. Harper and that of Mr. Radcliffe. Mr. Harper contended that he and Mr. Radcliffe were conspiring to convince M.S. to

3

give false testimony. Mr. Radcliffe testified that he believed the version of events set forth in Seth's letter was accurate—that M.S. had willingly gone with Seth and there was no kidnapping.

Mr. Harper had serious credibility issues, which were explored on cross-examination during the trial. He had pled guilty to witness tampering and hoped that testifying against Mr. Radcliffe would result in a reduced sentence. He admitted to a history of lying. He had also committed arson and operated a synthetic marijuana business.

After the jury returned its verdict, Mr. Radcliffe filed a motion for a new trial alleging that Mr. Harper had given false testimony. He claimed that Mr. Harper's sister indicated that Mr. Harper had told her that he intended to lie at trial. The Court ordered that Mr. Harper's recorded jail telephone calls be provided to Mr. Radcliffe and his attorney for review, but no call with the alleged admission of an intent to give false testimony was found. Mr. Radcliffe then contended that the conversation may have taken place during a jail visit, and so the Court held a hearing. Mr. Radcliffe's wife, Angela Radcliffe, testified that Mr. Harper's sister, Kimberly Morgan, had called her during trial and told her that Harper said he would lose his plea deal if he told the truth during his testimony. Ms. Morgan testified that she had made no such statement and believed that Mr. Harper testified truthfully. She stated that she had told Ms. Radcliffe that she was hurt by Mr. Harper's prior lies to her about his criminal conduct, and that Mr. Harper did not want to testify, but had no choice under the terms of his plea agreement. The Court denied the motion for a new trial, finding no admissible evidence that Mr. Harper had expressed an intention to give false testimony.

Mr. Radcliffe filed a direct appeal, but voluntarily dismissed it after filing this Section 2255 motion.

## STANDARD OF REVIEW

This Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). When reviewing portions of the PF&R *de novo,* the Court will consider the fact that Petitioner is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

## DISCUSSION

Mr. Radcliffe asserts that his conviction is invalid because of prosecutorial misconduct and ineffective assistance of counsel. He argues that the United States withheld material exculpatory and impeachment evidence and knowingly presented false testimony from Mr. Harper. He contends that his attorney failed to obtain and use text messages from Seth's cell phone in the case, failed to call certain witnesses, failed to object to unfairly prejudicial evidence, and failed to effectively cross-examine Mr. Harper.

The Magistrate Judge found that Mr. Radcliffe's *Brady* and *Giglio* claims lack merit because the evidence at issue (a) was disclosed and/or (b) was not exculpatory. Mr. Radcliffe cited text messages downloaded from Seth's cell phone, recorded telephone calls involving Mr. Harper,

and a list of Mr. Harper's accusations against Seth and Mr. Radcliffe generated in relation to his guilty plea. She further found that Mr. Radcliffe's allegations regarding Mr. Harper's testimony are largely unsupported, and the specific instances of inconsistent statements involve immaterial details of the kidnapping, rather than information central to the witness tampering conviction. Finally, she found that Mr. Radcliffe's allegations of ineffective assistance of counsel were without merit because his counsel's decisions regarding discovery, witnesses to call, evidence to introduce, cross-examination and impeachment techniques, and objections during trial were not objectively unreasonable, and there is not a reasonable probability that Mr. Radcliffe's proposed strategies would have altered the result of the trial.

In his objections, Mr. Radcliffe contends that the Magistrate Judge failed to construe his pleadings with sufficient liberality. He argues that the United States behaved with a lack of candor regarding the asserted *Brady* and *Giglio* material. He contends that the United States had an obligation to specifically disclose relevant text messages from Seth's phone, rather than simply providing the entire 3,821-page download. He further argues that the United States failed to disclose evidence that he believes casts doubt on whether M.S. was kidnapped or went with Seth willingly. Mr. Radcliffe claims that a complete review of Mr. Harper's jail calls reveals that he lied during his trial testimony, because he told his sister on June 8, 2016, that the Radcliffes (referring to Seth's parents) did not know that Seth had hit M.S., and on July 7, 2016, he told his sister that he had not known, at an unspecified prior time, that Seth had hit M.S. Mr. Radcliffe argues that these recordings would have damaged Mr. Harper's credibility and demonstrated that Mr. Harper had not shared details of the kidnapping with Mr. Radcliffe. Finally, Mr. Radcliffe argues that the alleged *Brady* violations contributed to his sentence, as well as his conviction.

In *Brady v. Maryland*, the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "Three essential components of a *Brady* violation circumscribe the duty [of disclosure]: (1) the evidence at issue must be favorable to the defendant, whether directly exculpatory or of impeachment value; (2) it must have been suppressed by the state, whether willfully or inadvertently; and (3) it must be material." *Spicer v. Roxbury Corr. Inst.*, 194 F.3d 547, 555 (4th Cir. 1999) (internal quotation marks omitted). "Impeachment evidence…as well as exculpatory evidence, falls within the *Brady* rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985) (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)). Undisclosed *Brady* evidence "is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id*. at 682.

The asserted *Brady* evidence in this case consists of text messages allegedly describing the kidnapping in its immediate aftermath; recorded telephone calls in which Mr. Harper discussed details of the kidnapping, including one indicating that Mr. Radcliffe was not aware of all of the details; and Mr. Harper's written accusations against Seth and Mr. Radcliffe, which the United States provided to Mr. Radcliffe's counsel a few days before the trial. None of the evidence is exculpatory or impeachment evidence. Co-conspirators do not always share complete information with one another, and the underlying kidnapping was relevant only to the extent it prompted the effort to tamper with a witness. Any inconsistencies in Mr. Harper's discussions of his understanding of the facts of the kidnapping were immaterial to the core issue of whether Mr.

7

Harper and Mr. Radcliffe conspired to tamper with M.S. and influence her testimony. In addition, the text messages from Seth's phone and Mr. Harper's written statement were disclosed. Therefore, Mr. Radcliffe's objections to the PF&R's recommendation that his motion be denied as to the *Brady* claims and as to the allegations that the United States knowingly presented false testimony must be denied.

It is not clear that Mr. Radcliffe's objections extend to the ineffective assistance of counsel findings. In the interests of completeness and to ensure liberal construction of the *pro se* filing, the Court will provide *de novo* review of the PF&R in its entirety.

"[T]he right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment. . . ." *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 ()1988). "[T]he purpose of providing assistance of counsel is simply to ensure that criminal defendants receive a fair trial." *Wheat*, 486 U.S. at 158-59. (internal quotations and citations omitted). The standard for a claim based on ineffective assistance of counsel is well settled. In *Strickland v. Washington*, the United States Supreme Court held that to succeed on such a claim, one must establish that his counsel's performance "fell below an objective standard of reasonableness" and as a result of this shortcoming, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. 668 at 669, 694 (1984).

Mr. Radcliffe's ineffective assistance of counsel allegations overlap significantly with his *Brady* and other claims. As discussed, Seth's cell phone records and Mr. Harper's recorded calls are not exculpatory and additional focus on them during trial would not have impacted the jury's

consideration of the elements of the charged offense.  Evidence regarding the kidnapping itself, including photos of bullet holes and a neighbor's testimony about Seth pointing a gun at her, to which Mr. Radcliffe's counsel failed to object, was likely admissible to provide context for the testimony Mr. Radcliffe was charged with conspiring to alter.  There was no suggestion that Mr. Radcliffe had any involvement in the underlying kidnapping, limiting any prejudicial effect, and, as Judge Eifert explained, there "is no reasonable possibility, much less probability, that the outcome of Radcliffe's trial would have been different if the jury never saw and heard the salacious details of the kidnapping." (PF&R at 33.)

Mr. Radcliffe further argued that his attorney should have called his wife and his daughter to testify that they listened to the telephone call between Mr. Harper and Mr. Radcliffe that took place on December 23, 2015, and that there was no discussion about trying to influence M.S.'s testimony.  As Judge Eifert found, that phone call was one of a pattern of communications, including some written and/or recorded communications.  Further, "the decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks, and one to which we must afford enormous deference." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004) (quotation marks and internal punctuation omitted).  The decision made by Mr. Radcliffe's counsel about which witnesses to call constitutes trial strategy for which the Court must afford great deference.  Calling Mr. Radcliffe's wife and daughter to testify about one of many communications would not have been likely to substantially impact the jury's evaluation of the evidence and could have exposed them to potentially damaging cross-examination.  Thus, the Court finds that Mr. Radcliffe has failed to assert a viable claim that his counsel's performance was constitutionally deficient.

## MOTION FOR DISCOVERY

After filing his objections, Mr. Radcliffe filed an additional motion seeking limited discovery as to an allegation that his trial was unfair because "a severe PTSD relapse…made him look guilty to the Court during cross-examination." (Document 277 at 1.) He explained that he suffers post-traumatic stress disorder as a result of a car accident, compounded by the drowning death of his two-year-old granddaughter in a separate incident. As a result, he claims that he was unable to adequately respond to "the intense and constant bombardment of incriminating accusations and questions during cross-examination." (*Id.* at 2.) Mr. Radcliffe did not raise the issue of his asserted PTSD during trial, although he does not claim it is a new diagnosis. As such, it is not a basis for challenging his conviction. Even if it had been raised during the trial, it is unclear what remedy Mr. Radcliffe could have sought. Criminal defendants are free to determine whether to testify. Testifying without being cross-examined is not one of the options. Defendants, with the assistance of counsel, must always weigh the potential risks and benefits of testifying, and nothing suggests that Mr. Radcliffe was subject to any undue pressure to testify. Mr. Radcliffe has presented no factual or legal basis for a "do-over" of his trial based on his allegation that his PTSD impacted his performance on cross-examination. Finding that Mr. Radcliffe has presented nothing to suggest that pursuing information about his PTSD diagnosis would have any bearing on the outcome of his Section 2255 motion, the Court denies the motion.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the Movant's *Section 2255 Rule 6 Leave of Court Request* (Document 277) be **DENIED**. The Court further **ORDERS** that the *Movant's Objections to the Proposed Findings and Recommendations* (Document 276) be **OVERRULED**, that the *Proposed Findings and Recommendation* (PF&R)

(Document 265) be **ADOPTED**, that the Movant's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody* (Document 256) be **DENIED**, and that this action be **DISMISSED**.

The Court has additionally considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). The Court concludes that the governing standard is not satisfied in this instance. Accordingly, the Court **DENIES** a certificate of appealability.

The Court **DIRECTS** the Clerk to send a copy of this Order to Magistrate Judge Eifert, to counsel of record, and to any unrepresented party.

ENTER: November 12, 2019

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA